IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------------  :
INTERNATIONAL BROTHERHOOD OF          : CASE NO.  1:03 CV 1213
ELECTRICAL WORKERS, LOCAL 71,         :
                                      :
                          Plaintiff,  : MEMORANDUM AND ORDER
                                      : GRANTING PLAINTIFF'S MOTION FOR
              -vs-                    : SUMMARY JUDGMENT AND DENYING
                                      : DEFENDANT'S MOTION TO DISMISS
                                      : OR IN THE ALTERNATIVE TO STAY
TRAFFTECH, INC.,                      : THE PROCEEDINGS.
                          Defendant.  :
------------------------------------------------------  :
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

           Plaintiff International Brotherhood of Electrical Workers, Local Union 71 ("IBEW

Local 71") brought this action pursuant to Section 301 of the Labor Management Relations

Act, ("LMRA") 29 U.S.C. § 185, to compel the defendant employer, Trafftech, Inc.

("Trafftech") to arbitrate several employment-related disputes.  (Docket # 1).  According to

IBEW Local 71, the differences arise under its collective bargaining agreement ("CBA" or

"Agreement") with Trafftech, requiring both parties to submit to binding arbitration in

concert with the terms of the Agreement.  Trafftech maintains the Court lacks subject

matter jurisdiction to address what it regards as essentially a statutory interpretation of a

representational matter within the exclusive jurisdictional purview of the National Labor

Relations Board (the "Board" or "NLRB").  (Docket # 5).

           The Court now has before it IBEW Local 71's motion for summary judgment on their

complaint to compel arbitration under the terms of the Agreement.  (Docket # 16).

Trafftech has submitted a brief in opposition, aggregated with a motion to dismiss or in the alternative to stay the matter pending ruling by the Board.[1]  (Docket # 18).  IBEW Local 71 filed a reply brief in support of its motion for summary judgment and a memorandum in opposition to Trafftech's motion to dismiss or for a stay in the matter.  (Docket # 19). Finally, Trafftech submitted its reply brief in support of its motion to dismiss or for a stay. (Docket # 20).

The issues are ripe for the Court's consideration.  For the reasons indicated below, IBEW Local 71's motion for summary judgment is granted, compelling the parties to submit their grievances to arbitration.  Accordingly, Trafftech's motion to dismiss, or in the alternative to stay pending the Board's ruling, is denied, for the reasons discussed herein.

## I.    BACKGROUND

On 25 August 1998, Trafftech signed a letter assenting to the provisions of the collective bargaining agreement between The Greater Cleveland Chapter of the National Electrical Contractors Association ("NECA") and IBEW Local 71. ("Argreement")  (Docket 18; Defendant's motion to dismiss Exh C).  Trafftech is engaged in traffic signal and street light work, as well as guardrail construction and striping work, done primarily on highways. (Gregg Sickles Affidavit, ("Sickles Aff.")  IBEW Local 71 Motion for Summary Judgment, ¶

---

[1]Trafftech styles the motion to dismiss pursuant to Fed. R. Civ. P. 12(h)(3), raising a question of subject matter jurisdiction.  Rule 12(h)(3) compels the Court to consider dismissal of a matter "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Consequently, the defendant's submission of a dispositive motion more than a month beyond the dispositive motions deadline does not raise the timeliness concerns alleged by the plaintiff.

Curiously, however, Trafftech submits its motion to stay pending the Board's ruling long after the Board had ruled that it would hold its consideration of this matter and the parties representational claims in abeyance until the Court has rendered a determination on the Section 301 issue placed before it.  (Docket 19; Plaintiff's Reply Brief, Exh's. 1, 2).

4).  IBEW Local 71 represents employees engaged in the electrical industry, including the transmission of electricity, such as the running of electrical lines, erecting of poles and towers to support those lines, working on traffic signal lights and street lights, and working on sub-stations that transmit electricity to industrial, commercial and residential structures. (Sickles Aff., ¶ 3).

Prior to entering into a CBA with IBEW Local 71, Trafftech entered into a CBA with the Laborers District Council of Ohio of the Laborers International Union of North America, Local Union No. 860, AFL-CIO.  ("Local 860").[2]  Trafftech maintains: "Prior to entering into the CBA with Trafftech, Local 71 knew full well that the CBA of Local 860 were [sic] covered the installation of traffic control devices.  They were also aware that they would be working shoulder to shoulder with the members of Local 860." (Docket 18, Motion to Dismiss, p. 2).

In the "Recognition" clause of the CBA, Trafftech agreed to recognize IBEW Local 71 "as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment."  (Docket 17, Agreement, p. 2).

_____

[2]In its brief in support of dismissal, Trafftech represents the CBA between itself and Local 860 covered the installation of traffic control devices under the definition of "Highway Construction," which the CBA defined as: "work performed to provide a facility to accommodate vehicular or pedestrian traffic (except as limited herein) and includes the construction of all . . . highway lighting, signal lighting . . ." (Docket 18, p. 2 citing to Article II of the CBA, Definitions, item 11(a)).  The defendant has not placed the referenced CBA into evidence before the Court to establish context for its central contention that this matter is a representational dispute between Local 860 and IBEW Local 71.  Because the Court regards the issue as, at base, a contractual dispute between Trafftech and IBEW Local 71 over the terms of the Agreement pertaining to work assignments, hours and wages, and not a representational issue, it need not address the reach and constructive meaning of the terms of the CBA between Local 860 and Trafftech.

On 21 August 2001, Trafftech and IBEW Local 71 entered into an addendum to the Agreement upon defendant's concern that it not be represented by NECA in collective bargaining or in the processsing of grievances.  References to NECA were removed from the Agreement between IBEW Local 71 and Trafftech, and Article I, §§ 5-8, concerning grievances were fully amended to read as follows:

> (a) Section 5 – A grievance or question in dispute is defined as a claimed violation of this Agreement.  Whenever the Union or an employee have a grievance or a dispute concerning the application of the terms of this Agreement, the matter should first attempt to be resolved with a representative of Trafftech.
>
> (b) Section 6 – Should no agreement be reached as described above in Section 5, then, within five (5) working days, exclusive of weekends and holidays, after receipt by Trafftech of a written request for arbitration, the parties shall jointly request Federal Mediation & Conciliation Service to submit to the parties duplicate lists of seven (7) disinterested arbitrators. The parties shall alternatively strike names from the list and the last name remaining after the others have been so stricken from the list shall be the arbitrator to hear the grievance.
>
> (C) Section 7 – The arbitrator shall have jurisdiction and authority to interpret and apply the provisions of this Agreement only insofar as shall be necessary to the determination of such grievance.  The arbitrator shall not have jurisdiction or authority to add to or subtract from or to modify any of the terms of this Agreement, nor establish or change any wage structure(s).  The decision of the arbitrator shall be final and binding upon the parties.  It is agreed that each party shall pay one-half (½) of the fees and expenses of the arbitrator.

(Docket 16, Mot. for Summary Judgment, Exh. A).

On 12 May 2003, Wally Sickles, business manager for IBEW Local 71, submitted notice of his "request to file for arbitration with the Federal Mediation and Conciliation Service" on eleven separate points of contention between the Union and Trafftech.

4

(Trafftech Motion to Dismiss, Exh. D).[3]  IBEW Local 71 submitted its request for arbitration

on the following eleven contractual violations:

1.    Trafftech violated the Recognition Clause by hiring Laborers to perform electrical or electrical related traffic signal and/or highway street lighting work.

2.    The assigning of work to others outside of the classifications as defined in the collective bargaining agreement is a material breech [sic] of the contract.

3.    Employees shall be those designated as Outside workers as defined by the IBEW Constitution not Laborers.

4.    The specified workweek is five (5) eight (8) hour days.  At no time did this office agree to a four-ten work week schedule.  The agreement is clear that the Business Manager must give mutual consent.  At no time was consent granted.  Subsequently, I am hereby requesting payroll reports for the past five years so an adjustment can be made.  Payment should be eight hours of straight time pay and two hours at time and one-half.  I was also informed that no lunch period was taken as per the agreement.  Thus an additional one-half hour of time and one-half will apply.

5.    As explained in item four (4) all work over eight hours will be paid at time and one-half.  Overtime for working through the lunch period and time over eight hours worked shall be applied.

6.    The General Foreman classification is part of the collective bargaining agreement.  Subsequently, the employer does have the discretion to appoint, however, the General Foreman must be an IBEW member.

---

[3]Mr. Sickles adhered to the CBA addendum between Trafftech and IBEW local 71 in submitting the several disputes, initially, to Trafftech in the interest of resolving the parties' differences.  Mr. Sickles submitted the request for federal mediation subsequent to his determination of 7 May 2003 that the parties could not resolve the dispute alone. (Motion to Dismiss, Exh. D.)  According to Mr. Sickles' affidavit, job referral issues between Trafftech and IBEW Local 71 had prompted previous grievances and lawsuits in 2002.  (Sickles Aff. ¶¶ 10, 11).

5

7.    I was informed that several jobs lack supervision.  This section is clear, wherein, all jobs with two or more men must have at least a sub-foreman.

8.    The ratio per the agreement is one (1) groundman to two (2) journeyman.  Your ratio has been in non-conformance.  Further, no Laborer should be employed under this agreement.

9.    No groundman shall work in the air.  A groundman may assist a journeyman of his work on the ground.  Cease at once this practice.

10.   Parties to the agreement (IBEW Local 71 and Trafftech) agree to the system of referral of applicants for employment.

11.   The Union (Local Union 71) shall be the sole and exclusive source of applicants for employment.  Remove all Laborers immediately.

In his letter of notice to Trafftech, Mr. Sickles specifically referenced a corresponding clause in the Agreement for each of IBEW Local 71's grievances. Accordingly, the particular disputes that have given rise to IBEW Local 71's complaint before this Court, to compel arbitration, are grounded in the voluntary Agreement between the Union and Trafftech.  According to Mr. Sickles, the following terms of the Agreement correspond to each particular grievance noted above, as follows:

1.    [Recognition Clause] The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

2.    [Article 2, § 10(a)] The subletting, assigning or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW, or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration,

6

painting, or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

3.    [Article 2, § 11(a)] The employees coming within the bargaining unit shall be those who are designated as Outside Workers in the Constitution of the International Brotherhood of Electrical Workers.

4.    [Article 3, § 1(a)] Eight (8) hours shall constitute a work day, from 8:00 A.M. to 4:30 P.M on Mondays through Fridays inclusive, with one-half (½) hour set aside for lunch from 12:00 P.M. to 12:30 P.M., unless otherwise changed by mutual consent.  Five (5) such days shall be a work week.

5.    [Article 3, § 2] Any work performed outside of the regular work day shall be done only with the express authorization of the Employer or his representative.  All work performed outside the regular work day or week shall be paid at one and one-half (1 ½) times the regular rate of pay.  Overtime for the first eight (8) hours on Saturday will be one and one-half (1 ½) times the regular rate of pay, all hours after the first eight (8) will be double time.  All work performed on Sundays and Holidays shall be paid at double (2X) the regular rate of pay.

6.    [Article 3, § 6] A General Foreman may be appointed at any time and solely by the Employer at the Employer's discretion.

7.    [Article 3, § 25] All jobs beginning with two or more workmen at least one will be designated as a Sub-Foreman.

8.    [Article 3, § 26(a)]  There shall be no more than (1) Groundman for each two (2) Journeyman except that this ratio may be changed by mutual consent of the parties.

9.    [Article 3, § 26(b)] A Groundman, when directed, shall assist a Journeyman Lineman in the performance of his work on the ground, including the use of hand tools.  Under no circumstances shall this classification climb poles, towers, ladders, or work from an elevated platform or bucket truck.  This classification shall not perform work normally assigned to an apprentice lineman.

10.   [Article 8, § 1] In the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of referral applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of

7

eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

11.    [Article 8, § 2] The Union shall be the sole and exclusive source of referrals or applicants for employment.

On 12 May 2003, Mr. Sickles submitted the IBEW Local 71 grievances to Trafftech for arbitration pursuant to the parties' Addendum which relies upon the Federal Mediation & Conciliation Service.  Maintaining, as it does now before this Court, that the "heart of the matter is Traftech's use of Local 860 laborers in the installation of traffic control devices," Trafftech filed a Representational Matter ("RM") petition with the NLRB on 27 May 2003. (Docket # 19, Exh. 2, Case No. 8-RM-1073).  Two days later, on 29 May 2003, IBEW Local 71 filed a charge against Trafftech with the NLRB alleging unfair labor practices within the meaning of the National Labor Relations Act §§ 8(a)(1), (2), & (5).  (Docket # 18, Trafftech Motion to Dismiss, Exh. F.; Docket # 19, Exh. 1, Case No. 8-CA-34301). Following those filings, IBEW Local 71 filed this action before the Court on 16 June 2003, seeking to compel arbitration.  (Docket # 1).  After convening a Case Management Conference on 15 April 2004, the Court, with the consent of the parties, deferred to the proceedings pending before the NLRB and ordered a stay of the case until 16 August 2004.  (Dockets # 11, 13).

In a letter to the parties on 30 November 2004, Frederick J. Calatrello, Regional Director of the NLRB, notified the parties that the matters before it would be "administratively deferred" in light of this Court's "concurrent jurisdiction of cases involving breaches of collective bargaining agreements under Section 301 of the Labor

8

management Relations Act."[4]  (Docket # 19, Exhs. 1 & 2).  The NLRB determined to retain

jurisdiction of the case filed by IBEW Local 71 "in its entirety by holding it in abeyance

pending the outcome of the lawsuit."  (Exh. 1 p. 1, 2).  Likewise, with regard to Trafftech's

representational claim, the NLRB specifically determined to hold the petition in abeyance

"until the U.S. District Court renders a decision based on certain coextensive contractual

claims."  (Docket # 19, Exh. 2).


## II.      SUBJECT MATTER JURISDICTION

As an initial matter, the Court addresses whether it possesses subject matter

jurisdiction to review IBEW Local 71's action to compel arbitration.  Trafftech raises the

issue of lack of subject matter jurisdiction, not as a matter of Fed. R. Civ. P. 12(b)(1), but in

its opposition to IBEW Local 71's motion for summary judgment, couched as a motion to

dismiss pursuant to Fed. R. Civ. P. 12(h)(3).[5]  The Court will regard

---

[4]After noting that IBEW Local 71's NLRA Section 8(a)(5) allegations before the NLRB were
"coextensive" with those alleged before this Court on 16 June 2003, the Board determined in full as follows:
        Upon contemplation of the various Section 8(a)(1), (2), (3), and (5) allegations
        raised in the instant unfair labor practice charge and the issues raised in a related
        representational matter, Case 8–RM–1073, I have determined that further processing of this
        case be administratively deferred given the Federal Court's concurrent jurisdiction of cases
        involving breaches of collective bargaining agreements under Section 301 of the Labor
        Management Relations Act.  Accordingly, I will retain jurisdiction of the above-referenced
        case in its entirety by holding it in abeyance pending the outcome of the lawsuit.  In the
        interim period, I am requesting that the parties keep me apprised of any developments.
(Docket # 19, Exh. 1, pp 1, 2).

[5]Contrary to IBEW Local 71's contention that Trafftech's Rule 12(h)(3) motion was untimely,
(Docket # 19, Plaintiff's Reply, pp. 11-12), the Rule clearly states on its face that such a filing may be made
at any time. Fed.R.Civ.P. 12(h)(3); S.J. v. Hamilton County, Ohio, 374 F.3d 416, 418 (6th Cir. 2004); Von
Dunser v. Aronoff, 915 F.2d 1071, 1074 (6th Cir.1990).

Trafftech's motion as a timely challenge to the factual basis for jurisdiction pursuant to Rule

12(b)(1)[6] – namely, whether the relevant facts support the defendant's contention that

proper jurisdiction lies with the NLRB and not the Court. The crux of Trafftech's argument

that the Court lacks jurisdiction, rests on its characterization of this matter as, at base,

representational rather than contractual, and accordingly, within the primary jurisdictional

purview of the NLRB. In support of its position, Trafftech relies upon this Circuit's

determination in International Brotherhood of Boilermakers, Iron Ship Builders,

Blacksmiths, Forgers & Helpers, AFL-CIO v. Olympic Plating Industries, Inc., 870 F.2d

1085 (6th Cir.1989) ("Olympic Plating"), in which the Court recognized a "strong policy in

---

[6]Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of [subject matter] jurisdiction on its face ... or it can attack the factual basis for [subject matter] jurisdiction...." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir.2004).

In Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 890 (3d Cir.1977), the court explained the distinction between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings.

> The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--its very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

549 F.2d at 890-891. See also, Thornhill Publishing Co. v. General Telephone & Electronics Corp., 594 F.2d 730, 732-734 (9th Cir.1979); Williamson v. Tucker, 645 F.2d 404, 412-414 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); Osborn v. United States, 918 F.2d 724, 728-730 (8th Cir.1990); Holt v. United States, 46 F.3d 1000, 1002-1003 (10th Cir.1995).

The Sixth Circuit adheres to the procedural parameters of Rule 12(b)(1) enunciated by the courts in the above-cited cases. In Rogers v. Stratton Industries, Inc., 798 F.2d 913 (6th Cir.1986), the Court explained: "on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes." 798 F.2d at 915 (footnotes and citations omitted.) See also, Ohio National Life Insurance Co. v. United States, 922 F.2d 320, 324-325 (6th Cir.1990).

In the instant case, Trafftech's Rule 12(b)(1) motions did not mount a mere facial challenge to the plaintiff's complaint allegations of jurisdiction. Rather, the Court is called upon to weigh the evidence concerning jurisdiction presented by the parties and to decide the jurisdictional facts.

10

favor of using the procedures vested in the Board for representational determinations in order to promote industrial peace."  870 F.2d at 1089.

In moving for summary judgment, and in opposing Trafftech's motion to dismiss, IBEW Local 71 relies upon this Circuit's recent determination in Paper, Allied-Industrial, Chemical & Energy Workers v. Air Products & Chemical, 300 F.3d 667, 672 (6th Cir. 2002), which recognizes federal court jurisdiction to enforce a contractual commitment to arbitrate disputes under Section 301 of the LMRA.  While the Circuit Court acknowledged the dispute in Air Products potentially implicated representational issues it, nevertheless, recognized the matter as primarily involving the interpretation and application of the terms and provisions of the Agreement struck between the parties.

When a Rule 12(b)(1) motion attacks the factual basis for subject matter jurisdiction, "the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists."  DLX, 381 F.3d at 516 (citing, inter alia, RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1133-35 (6th Cir.1996)).  In reviewing a Rule 12(b)(1) motion challenging the factual basis for jurisdiction, "a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990).  If a court determines that it lacks subject matter jurisdiction, the court shall dismiss the action."  Fed.R.Civ.P. 12(h)(3).

In the instant case, both parties have attached exhibits to their submissions, including an affidavit and other documents, such as the Agreement and Addendum, relevant to the disposition of Trafftech's motion.  The Court, utilizing its discretion to allow

11

the presentation of such materials, has reviewed those materials submitted by the parties in support of their respective contentions.  The Court finds that neither the submission of additional materials nor a limited evidentiary hearing would aid the Court in the resolution of Trafftech's Rule 12(h)(3) motion.

Federal courts gain jurisdiction to examine alleged violations of contracts between certain employers and labor organizations pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), which states, in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The United States Supreme Court has held that Section 301 does more than confer jurisdiction; it "expresses a federal policy that federal courts should enforce [such] agreements . . . and that industrial peace can be best obtained only in that way."  Textile Workers Union of Am. v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

In this matter, the difficulty of entering the jurisdictional thicket and parsing contractual from representational issues has been eased considerably by the fact that the NLRB has reviewed the plaintiff's grievances and the defendant's representational claims.  In so doing, the NLRB has taken the position that it will administratively defer the

12

allegations before the Board while the Court, which has "concurrent jurisdiction," "renders a decision based on certain coextensive contractual claims."  (Docket # 19, Exhs. 1, 2).[7]

Accordingly, Olympic Plating, upon which Trafftech relies for its contention in opposition to the Court's jurisdiction, is clearly distinguishable.  In Olympic Plating, the International union filed an action against the employer, claiming "breach of contract."  The International also filed an action with the Board against the employer and the local union for "unfair labor practice."  The underlying dispute in Olympic Plating – the resolution of which union was the proper representative of the company's employees – was primarily representational, and this Circuit concluded that merely referring to the claim as a "breach of contract" was insufficient for purposes of Section 301 jurisdiction.  Olympic Plating, 870 F.2d at 1089.  The parties in Olympic Plating had "meaningfully indistinguishable" claims before the Court and the NLRB.  Id.  The procedural posture of the instant matter is quite different.  Here the NLRB has taken a specific, clear and deferential stand toward the clearly contractual issues forwarded by IBEW Local 71 and has placed the entire matters – both IBEW's complaint and Trafftech's representational matter – in administrative abeyance.

_____

[7]Trafftech maintains that the Board has primary jurisdiction in this dispute because it is actually an effort by IBEW Local 71 to assert jurisdiction over Local 860.  (Docket # 20 pp. 7-10).  This argument lacks merit for at least two reasons.  First, the NLRB acknowledges the Court's concurrent jurisdiction which has compelled the Board to place the matters before it in administrative abeyance.  Second, the list of grievances presented to Trafftech and the Court by IBEW Local 71 ask for an interpretation of the Agreement existing between the parties in relation to the wages, hours and work assignments contracted.  One of the questions raised by the contract is whether IBEW Local 71 has the exclusive right, by dint of the Agreement, to place its members into the signaling assignments.  Whether the Agreement can be so interpreted is for an arbitrator to determine, as a matter of the construction of the contract.  Trafftech makes the further argument that the Court simply return the case to the Board.  (Docket # 20 pp. 9-10).  That argument is also without merit.  As the NLRB has placed the matters before it in administrative abeyance and recognized the Court's concurrent jurisdiction in this matter, the Court shall review the contractual implications of the plaintiff's claim.

Moreover, while recognizing that a few of IBEW Local 71's eleven grievances implicate representational issues, the unqualified epicenter of this matter rests in the terms and provisions of the private agreement struck between the parties.  At base, IBEW is not seeking to represent the Laborers at Trafftech, but, rather, to compel Trafftech to arbitrate contractual differences of wages, hours and work assignments.  This contractual dispute extends to include IBEW Local 71's first and eleventh grievance in which it alleges, respectively, a violation of the Agreement in Trafftech's use of Laborers for traffic signal and street lighting work, and a violation of the Agreement in Trafftech's reliance on Laborers as a source of applicants for employment.  Contrary to Trafftech's position that the plaintiff is attempting to assert jurisdiction over Laborers Local 860, neither the complaint nor the grievances forwarded by IBEW Local 71 render such a conclusion reasonable.  Rather, IBEW Local 71 is seeking an interpretation of the Agreement which may, or may not, be understood as providing the plaintiff with the contractually bargained for hiring and work assignment exclusivity it alleges.  There is simply no evidence in the record that IBEW Local 71 seeks to represent the employees of Laborers Local 860.

This matter aligns closely with the United States Supreme Court's decision in <u>Carey v. Westinghouse Elec. Corp</u>., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed. 2d 320 (1964).  In <u>Carey</u>, the Supreme Court held that a dispute between an employer and two unions as to whether certain employees in one union were doing the work of employees in another union was properly before the federal court notwithstanding the availability of an alternative remedy before the NLRB.  <u>Id</u>.  Thus, in some instances, such as the matter before the

14

Court involving contractual claims of work assignment, hours and wages, Section 301 can provide the parties with an independent forum in addition to NLRB disposition.

As Trafftech observes, as a general rule, a federal district court must yield to the "primary jurisdiction" of the NLRB in adjudicating activity that is either arguably protected by Section 7 or arguably prohibited by section 8 of the NLRA. (Docket # 19, Motion to Dismiss, pp. 7-11).  See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244-45 (1959).  Courts have well established, however, that this "primary jurisdiction" doctrine does not apply to deprive a federal district court of jurisdiction over a suit brought under Section 301 for breach of a collective bargaining agreement, even when the activity in question is either arguably protected by Section 7 or arguably prohibited by Section 8 of the NLRA.  See, e.g., Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 (1976);  William E. Arnold Co. v. Carpenters, 417 U.S. 12 (1974); Smith v. Evening News Ass'n, 371 U.S. 195 (1962). Thus, pursuant to Section 301, a federal district court has independent, concurrent jurisdiction over a claim alleging a breach of a collective bargaining agreement, even though the breach may also constitute an unfair labor practice.  See, e.g., Store v. Teamsters, 759 F.2d 517 (6th Cir. 1985).   Consequently, the fact that plaintiff has filed a substantially similar claim with the NLRB and here alleges activity, as the Board acknowledges, encompassed by Section 8 does not deprive this court of jurisdiction over plaintiff's claims under Section 301.

Indeed, while Trafftech maintains the Court lacks jurisdiction to hear the case as it "involves matters prohibited or protected by § 7 and 8 of the NLRA," Section 8(f) of the NLRA, 29 U.S.C. § 158(f) (1982), nevertheless, "allows construction industry employers

and unions to enter into agreements setting the terms and conditions of employment for the workers hired by the signatory employer without the union's majority status first having been established" under section 9 of the NLRA.  Jim McNeff, Inc. v. Todd, 461 U.S. 260, 266, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983) (noting a "critical distinction" between section 301 actions to enforce pre-hire agreements and those seeking recognition of the union as the exclusive bargaining representative of a group of employees).  Although execution of a section 8(f) pre-hire agreement gives a union signatory neither the right to picket in order to compel a construction industry employer to negotiate, NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978), nor the right to maintain an action for recognition as the exclusive bargaining representative for a group of employees, Local No. 3-193, Int'l Woodworkers of America v. Ketchikan Pulp Co., 611 F.2d 1295 (9th Cir.1980), until the union achieves majority status in an appropriate collective-bargaining unit, a union signatory may enforce the economic terms of a voluntarily executed pre-hire agreement in an action under section 301(a), regardless of the union's majority status.  Jim McNeff, 461 U.S. at 269, 103 S.Ct. at 1758 (observing that unlike attempts to compel negotiations, an action to enforce a voluntarily executed pre-hire agreement does not impinge upon the representational interests of the defendant's employees).

Accordingly, Courts have held that an NLRB determination of the appropriate collective-bargaining unit is not a prerequisite to a signatory union's section 301 action to enforce the economic terms of a pre-hire agreement. John Payne Co., 850 F.2d 1535, 1537 (11th Cir. 1988) (disposition of union's suit to enforce monetary obligations incurred

16

by construction industry employer under pre-hire agreement "would not require the district court to decide any representational issues, or other LMRA questions, that fall within the primary jurisdiction of the NLRB").

Because the Court finds that "[t]he heart of the case is a contractual rather than representational dispute," <u>Pace v. Honolulu Disposal Serv., Inc</u>., 227 F.3d 1150, 1152 (9th Cir.2000), it holds that the doctrine of "primary jurisdiction" does not prevent the Court from compelling arbitration of alleged violations of the agreement governing the parties' conduct pertaining to hours, wages and work assignments.  Therefore, the Court has jurisdiction under § 301 of the LMRA.


### III.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Id</u>. at 323;  <u>see</u> <u>also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (<u>quoting</u> <u>Gutierrez v. Lynch</u>, 826 F.2d 1534,

1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving

18

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . .  'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).


### IV .    MOTION FOR SUMMARY JUDGMENT TO COMPEL ARBITRATION

As the Court has determined it possesses jurisdiction to address IBEW Local 71's action, it now turns to the claim itself.  The plaintiff's have brought a suit to compel Trafftech to engage in arbitration with IBEW Local 71, pursuant to the parties' signed Agreement. IBEW Local 71 has moved for summary judgment on its claim, contending that no material facts are in dispute where the Court need only decide "if the party seeking arbitration is making a claim which on its face is governed by the contract."  Air Products, 300 F. 3d 667, 673, quoting General Drivers, Salesmen, and Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc., 23 F. 3d 1039 (6th Cir. 1994).  Trafftech concedes that once the Court has jurisdiction it is "indeed the proper venue to compel arbitration."  (Docket # 18 p. 14).

Courts possess a limited ability to compel arbitration.[8]  Unless the parties to a collective bargaining agreement clearly and unmistakably provide otherwise, the question

---

[8]The § 301 grant of jurisdiction is extremely limited. The United States Supreme Court holding in Textron Lycoming Reciprocating Engine Div. v. UAW, 523 U.S. 653, 118 S.Ct. 1626, 140 L. Ed. 2d 863 (1998), emphasized this narrowness. The plaintiffs in that suit sought a declaration that a contract was invalid. Relying on the specific statutory language of § 301, the Textron court explained, "[b]y its terms, this provision confers federal subject-matter jurisdiction only over 'suits for violations of contracts.'"  The Court reasoned that the phrase "for violations of contracts" encompassed only suits "filed because a contract has been violated" and therefore did not include "suits that claim a contract is invalid."

of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. United Steelworkers of America v Warrior & Gulf Navigation Co. 363 US 574, 80 S Ct 1347, 4 L Ed 2d 1409 (1960). According to the United States Supreme Court, the function of a court with respect to arbitration is limited to: assuring that the claim is governed by the contract; ordering parties to arbitration unless the arbitration clause is "not susceptible of an interpretation that covers the asserted dispute;" and refraining from reviewing the merits of an award so long as it "draws its essence from the collective bargaining agreement." United Steelworkers of America v American Mfg. Co. 363 US 564, 80 S Ct 1343, 4 L Ed 2d 1403 (1960); Paper, Allied Industrial, Chemical & Energy Workers Intern. Union v. Air Products & Chemicals, Inc., 300 F.3d 667 (6th Cir. 2002); see also Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union, 167 F.3d 953 (6th Cir. 1999). Thus, the judicial role does not include scrutiny of the arbitration procedure itself for general fairness. However, it does include the authority to grant a claim for specific performance to compel parties to honor an agreement to arbitrate. Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 451 (1957) (observing that section 301(a) "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements").

Additionally, in deciding whether the parties have agreed to submit a particular dispute to arbitration, a court is not to rule on the potential merits of the underlying claims. The issue as to whether the party seeking arbitration is right or wrong on the merits of the

dispute is a question of contract interpretation for the arbitrator. <u>United Steelworkers of America v American Mfg. Co.</u> (1960) 363 US 564, 80 S Ct 1343, 4 L Ed 2d 1403.

Accordingly, the Court may compel Trafftech to arbitrate the alleged contractual violations pursuant to the terms of the Agreement between the parties.[9]  The Agrreement's arbitration clauses, included at Trafftech's request, and bargained for by the parties, clearly delineate the procedures which the Court may compel.  The Agreement provides:

> (a) Section 5 – A grievance or question in dispute is defined as a claimed violation of this Agreement.  Whenever the Union or an employee have [sic] a grievance or a dispute concerning the application of the terms of this Agreement, the matter should first attempt to be resolved with a representative of Trafftech.
>
> (b) Section 6 – Should no agreement be reached as described above in Section 5, then, within five (5) working days, exclusive of weekends and holidays, after receipt by Trafftech of a written request for arbitration, the parties shall jointly request Federal Mediation & Conciliation Service to submit to the parties duplicate lists of seven (7) disinterested arbitrators. The parties shall alternatively strike names from the list and the last name remaining after the others have been so stricken from the list shall be the arbitrator to hear the grievance.
>
> (c) Section 7 – The arbitrator shall have jurisdiction and authority to interpret and apply the provisions of this Agreement only insofar as shall be necessary to the determination of such grievance.  The arbitrator shall not have jurisdiction or authority to add to or subtract from or to modify any of the terms of this Agreement, nor establish or change any wage structure(s).  The decision of the arbitrator shall be final and binding upon the parties.  It is agreed that each party shall pay one-half (½) of the fees and expenses of the arbitrator.

---

[9]Viewed in the proper light, the enforcement of the agreement to compel arbitration does not implicate the representational desires of Trafftech's employees, who remain free to petition for and to elect an exclusive representative pursuant to section 9 of the LMRA. Therefore, under the reasoning of <u>Jim McNeff, supra</u>, no determination of majority status in an appropriate bargaining unit is required in this case.

The Agreement struck between the parties clearly and unmistakably provides that Trafftech and IBEW Local 71 agreed to submit their differences over the provisions in the Agreement to an arbitrator for his or her interpretation and mediation. Accordingly, the Court grants the plaintiff's motion for summary judgment on its claim to compel arbitration of the alleged contractual violations.

## V.    CONCLUSION

For the reasons set forth above, this Court denies Trafftech's motion to dismiss and grants IBEW Local 71's motion for summary judgment on its claim to compel arbitration pursuant to the parties' collective bargaining agreement.


IT IS SO ORDERED.

                                          /s/Lesley Wells
                                          UNITED STATES DISTRICT JUDGE


Dated:  28 September 2005

22